## Fuller's Estate (No. 1).

*Practice, O. C.—Findings of fact—Appeals—Gift.*

1. Where a daughter claims the ownership of household goods as a gift from her deceased father, a finding of fact by the orphans' court adverse to the claim will not be reversed on appeal, where it appears that the only evidence in support of the claim was the deposition of a woman ninety-four years old, which was general in character without any identification of the goods, and it also appears that the goods remained in the possession of the decedent until his death, and that the question of the gift had been passed upon in another proceeding in which no appeal had been taken.

*Executors and administrators—Bond—Cost of entering bond—Act of June 24, 1895, P. L. 248.*

2. The Act of June 24, 1895, P. L. 248, allowing an administrator or trustee credit for money paid for entering a bond has no application to the case of a defaulting trustee who was compelled by his own neglect of duty to furnish a bond, or be removed from office.

Argued April 20, 1909. Appeal, No. 32, April T., 1909, by Elizabeth M. Fuller, from decree of O. C. Fayette Co., Dec. T., 1906, No. 29, dismissing exceptions to adjudication in Estate of Smith Fuller, deceased. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and HEAD, JJ. Affirmed.

Exceptions to adjudication. Before STEEL, P. J., specially presiding.

The facts are stated in the opinion of the Superior Court.

*Errors assigned* were in dismissing exceptions to adjudication.

*E. C. Higbee*, of *Sterling, Higbee & Matthews*, with him *Robinson & McKean* and *Smith & Brownfield*, for appellant.

*W. J. Sturgis*, of *Howell, Sturgis & Morrow*, for appellees.

OPINION BY HEAD, J., December 13, 1909:

The appellant is a daughter of the late Dr. Smith Fuller, and one of the executors named in his will which was admitted to probate more than fifteen years ago. From a number of references in the record itself and in the briefs of counsel, it appears that the settlement of this estate has been the subject of much contention between the parties interested, and a number of questions collateral to the present inquiry have already reached the orphans' court and been determined in that tribunal.

The first ground of appeal in the present case is that the learned court below erred in holding that the appellant had failed to establish, by competent and sufficient evidence, her allegation that her father in his lifetime had made a gift to her

of all his household goods. The conclusion thus reached resulted in a surcharge against the appellant, who was the accountant below, of $527.02.

The substance of the evidence before the orphans' court on this subject may be briefly stated thus. After the death of the decedent, an inventory, as required by law, was made of all his personal property. As already stated, this appellant and her brother, the late Hon. Frank M. Fuller, were the executors. The inventory included all of the household goods with the other property of the decedent and they were duly appraised. These household goods passed into the immediate possession of the appellant's coexecutor. At the time of their inventory and appraisement as part of the estate of the decedent no claim was put forward, as we understand it, by this appellant, that she was the owner of these goods. When Frank M. Fuller filed his first account, he claimed a credit for portions of these goods taken by himself and his brothers, John and William, aggregating about half the inventoried value. As early as 1894 this appellant filed her own account in which she charged herself "with the amount of the inventory of the individual property of said decedent," and, as against this charge, claimed credit for "all the appraised property which passed into the exclusive control of Frank M. Fuller, Esq., Exr., being the whole of said inventory except the cash in bank, etc." This account seems to have remained of record without any disposition having been made of it until in 1897, when the appellant presented a petition to the orphans' court setting forth that no auditor had ever been appointed to pass upon the exceptions to the account, and that it had never been confirmed; that the account contained some errors which the petitioner desired to correct, and she therefore asked leave to withdraw the account for that purpose. The petition in no way specified the nature of the errors referred to. The leave prayed for was given and the account withdrawn.

Meantime the appellant had filed exceptions to the account of her brother and coexecutor, denying his right to credit for the value of the household goods taken by himself and his brothers on the ground that these goods were not a part of the

estate of the decedent, having been given to her by her father in his lifetime. In support of her claim in that proceeding she offered the deposition, taken under rule of court, of Mary A. Getzendanner, a woman ninety-four years of age, then residing in New York City. The strength of that deposition is contained in the following excerpt from it relating to a declaration alleged to have been made by the decedent some eighteen years before the taking of the deposition. "He said, 'I am glad to have her home (referring to the appellant). She is a dear good girl. She went up to the attic and brought down all the goods which had been moved up there since my second marriage and had the furniture all renovated. She is not only taking good care of my house but of me as well, and I have given her all of my household goods.'" In that proceeding the learned trial judge of the orphans' court reached the conclusion that the exceptions filed by this appellant had not been sustained, and they were dismissed, and the account in that respect at least confirmed. From that decree, as we understand it, no appeal was ever taken.

When the appellant, some years after she had withdrawn her first account, filed the one now under consideration, she charged herself with no part of the household goods, and exceptions asking that she be surcharged with their value were filed. At this hearing the appellant offered in evidence the deposition already referred to which had been taken in the former proceeding. Upon objection, it was rejected by the learned judge below on the ground that it had not been taken in the pending proceeding and did not come within sec. 1 of the Act of March 28, 1814, 6 Sm. L. 208. There being thus no evidence to support the alleged gift, the exceptions were sustained and the appellant directed to be surcharged. Upon a reconsideration of the question in an opinion accompanying the final decree, the learned judge seemed to have reached the conclusion that he was in error in rejecting the deposition, but after giving it due weight, as if it had been admitted, he further concluded under all the evidence that the appellant had not succeeded in establishing the gift on which she relied. This being a conclusion of fact, reached by the auditing judge,

ought not to be disturbed by an appellate court except in a
clear case of manifest error. It is true he did not see or hear
the witness, and in this respect we have before us just what he
had before him, but this testimony, in the light of all the sur-
rounding circumstances, was not by any means conclusive.
The witness was a very aged person. The single declaration of
the decedent referred to had taken place many years before.
It was general in character, and there was nothing in it to
identify the property now in question as having been included
in the gift, if one were made. Considering the further facts
that Dr. Smith M. Fuller appeared to be in possession and con-
trol of this property down to the time of his death, the former
determination of this question in another proceeding where the
decree remained unappealed from, and the facts relating to the
inventory and account already referred to, we are unable to
say that the court below committed any reversible error in
finding as a fact that no valid gift of this property had been
made. The first assignment of error must therefore be dis-
missed.

In 1898 a petition was filed by one of the heirs of the dece-
dent setting forth that the executors had neglected to file their
accounts and perform the duties imposed upon them by the
act of assembly. An answer was filed by this appellant, but
for some reason, not disclosed by the record, this proceeding
reached no termination until 1906 when the orphans' court
made a decree requiring the appellant as executrix to give a
bond in the sum of $100,000, conditioned for the prompt and
faithful performance of her duties as executrix, and with the
provision that if she failed to give such bond and to carry out
the directions of the will before a date specified, her letters
should be vacated and she should be removed from her office.
In obedience to this decree, made apparently under the di-
rections of the act of March 29, 1832, she filed her bond with
the Citizens' Title & Trust Company for surety. When she
filed the present account she sought to take credit for the sum
of $500 paid to this company for becoming her surety, claim-
ing that she was entitled to this credit, in addition to her own
compensation, under the Act of June 24, 1895, P. L. 248.

Upon objections being filed to this item of credit, the orphans' court held that the estate was not bound for the repayment to her of this sum, although the fact that she had paid it had been given due consideration in fixing the amount of her compensation.

We do not think it necessary to consider or discuss the extent to which, if at all, the compensation of an executor, administrator or trustee, as heretofore regulated by law, would be affected by the act of 1895, in cases where it was intended to be applicable. We are satisfied that it was not intended to apply to the case of a defaulting trustee who was compelled by his own neglect of duty to furnish a bond to the end that he might not be entirely removed from his office. The act is entitled, "An act to allow receivers, trustees, etc., to include in the lawful expenses of executing their trusts such reasonable sum paid the company, etc." This seems to us a clear intimation that the act was intended to apply only in cases where trustees who were faithfully performing the duties of their trust were obliged by the letter of the statute or by an order of the court made in pursuance thereof to give security. It cannot be argued with any convincing force that a trustee, who had first abused his trust by failing to perform its duties to the manifest injury of the trust estate, could then saddle it with the costs of procuring a bond made necessary only by his own delinquency. If the appellant is required to pay the expense of her bond out of her own pocket, it will be but charging her with the consequences of her own neglect of duty. She cannot compel her brothers and sisters or their children to share with her the penalty of her own neglect of duty when they were in nowise responsible for it. The remaining assignment of error must therefore be dismissed.

Decree affirmed and appeal dismissed at the costs of the appellant.